**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COURTNEY VOYTON,**<br>**Plaintiff** | : | **No. 3:26cv27** |
| | : | **(Judge Munley)** |
| **v.** | : | **(Chief Magistrate Judge Bloom)** |
| **JOSEPH VOYTON, *et al.*,**<br>**Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are objections to a Report and Recommendation ("R&R") filed by *pro se* Plaintiff Courtney Voyton. (Doc. 11). The R&R recommends dismissal of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and denial of her accompanying motions for counsel and for a preliminary injunction. (Doc. 10). For the reasons set forth below, the objections will be overruled, and the R&R will be adopted in its entirety. Voyton will also be admonished for misusing generative artificial intelligence ("AI").

### Background

Courtney Voyton filed this civil rights action after involvement in proceedings in the Luzerne County Court of Common Pleas under Pennsylvania's Juvenile Act, 42 PA. CONS. STAT. §§ 6301–6375, Child Custody Act, 23 PA. CONS. STAT. §§ 5321–5340, and Protection from Abuse Act, 23 PA.

CONS. STAT. §§ 6101–6122.[1] The individual Defendants in this matter include: 1) Courtney's ex-husband, Joseph Voyton; 2) his attorney, Gregory Skibitsky, Jr.; 3) her former attorney, James Mulligan, and 4) the court-appointed guardian ad litem ("GAL"), Cara Phillips. Courtney also pursues claims in this action against: 5) Luzerne County; 6) Luzerne County Children and Youth Services ("Luzerne CYS"); 7) the Luzerne County District Attorney's Office ("Luzerne County DA's Office"); and 8) the Nanticoke Police Department ("Nanticoke PD").

Courtney and Joseph are the parents of Minor Child A.V.[2] (Doc. 1, Compl. ¶¶ 6–7). According to Courtney, on December 5, 2023, Joseph "climbed on top of her vehicle during a domestic violence episode." Id. ¶ 14. Joseph was allegedly angry with something on Courtney's phone. Id. ¶ 16. He also allegedly attempted to strike her through the window. Id. ¶ 19. Minor Child A.V. was seated in the back of Courtney's vehicle at the time. Id.

Courtney called for help. Id. Per the complaint, when the Nanticoke PD arrived, they threatened the plaintiff with attempted homicide charges. Id. ¶ 14. At the same time, however, officers also allegedly told Courtney that the incident

[1] The narrative in this background section is derived from the allegations in Courtney Voyton's complaint and the exhibits attached thereto. (Docs. 1 to 1-6).

[2] The court will refer to Courtney Voyton and Joseph Voyton using their first names in this memorandum.

never happened. Id. ¶ 15. Courtney responded that she had video footage of the incident. Id. Later, an officer allegedly admitted that the incident did occur. Id.

Courtney asserts that Nanticoke PD was aware of multiple reported domestic violence incidents. Id. ¶ 16. Instead of investigating or protecting Courtney, as alleged, the officers of that department told her that she needed mental health treatment. Id. When Courtney reported the incident to the Luzerne County DA's office and advised the office of the threats from the Nanticoke PD, an unidentified individual in the DA's office purportedly told her to "get out of the county. " Id. ¶ 18.

The December 5, 2023 incident resulted in child dependency proceedings under the Juvenile Act. Id. ¶ 19. On February 14, 2024, Minor Child A.V. was adjudicated dependent by agreement of the parties without any admission of wrongdoing.[3] (Doc. 1-3, Pl. Ex. A. at ECF p. 2). Judge Jennifer Rogers presided over the dependency proceedings, as did a non-party lawyer serving as a special master. Id. Joseph was ordered to participate in anger management and domestic violence intervention programming. Id. Courtney was ordered to engage with a domestic violence support center. Id. Notably, the child remained in the physical custody of both parents. Id.

[3] Different lawyers represented the Voytons during dependency proceedings. A different lawyer served as the GAL. Those lawyers have not been named as defendants in this action.

It appears that Courtney also filed a civil complaint for custody while the dependency proceedings were ongoing. (Doc. 1-3, Pl. Ex. A. at ECF p. 5). On May 1, 2024, while the dependency matter remained pending, Joseph and Courtney entered into an agreement with a specific shared custody schedule. Judge Rogers, the judge in the dependency proceedings, signed the court order setting forth the Voytons' agreement in writing.

On October 15, 2024, the court terminated dependency proceedings and entered an order stating that Minor Child A.V. was safe in the care of both parents. (Doc. 1, Compl. ¶ 19). Courtney alleges that the dependency court ignored her repeated warnings, including reports of unexplained marks on Minor Child A.V., the child making sexually inappropriate comments, and the plaintiff's discovery of "a video of her ex-husband engaging in sexually inappropriate acts and sending it to a minor–a video that has since gone viral." Id. ¶ 16. Her complaint asserts that Luzerne CYS is liable for closing the case rather than investigating Courtney's reports. Id. ¶ 31.

Proceedings involving Minor Child A.V. then shifted to the action in custody. Courtney, proceeding *pro se*, filed an emergency custody petition on October 28, 2024, alleging that Joseph had substance abuse issues and refused to consent to medically recommended surgery for A.V. Id. ¶ 23. Id. Courtney also alleged that Minor Child A.V. was experiencing escalating anxiety. Id.

On December 20, 2024, Judge Tarah C. Toohil conducted a hearing on Courtney's emergency custody petition. (Doc. 1-4, Tr. at ECF pp. 1–12). At the hearing, Defendant Joseph Voyton, now represented by Defendant Skibitsky, countered with oral motions to appoint a GAL and for Joseph to enjoy primary physical custody. At the conclusion of the hearing, Judge Toohil issued an order denying Courtney's emergency custody petition. Id. at ECF pp. 13–14. Judge Toohil appointed a GAL and temporarily reduced the plaintiff's physical custodial time to two hours per week in a public place. Id.

Per the plaintiff, Judge Toohil failed to conduct the mandatory best interest analysis required by the factors set forth at 23 PA. CONS. STAT. § 5328 and failed to follow the child relocation procedures at 23 PA. CONS. STAT. § 5337. Id. According to Courtney, the judge did not permit her to call a witness at the December 2024 hearing.[4] Id.

Courtney alleges that Joseph's counsel, Defendant Skibitsky, has a conflict of interest as an assistant county solicitor for Luzerne County and as former first assistant to then-Luzerne County District Attorney Stefanie Salavantis, who is now the President Judge of the Luzerne County Court of Common Pleas. Id. ¶ 44. Additionally, Courtney accuses the GAL, Defendant Phillips, as being a "part

[4] The hearing transcript indicates that this witness provided some type of casework services to Courtney during the dependency case. At the hearing, Courtney testified that she had relocated to live in this person's house.

of the problem." Id. ¶ 45. Per the plaintiff, all custody-related communication with the GAL must be routed through Defendant Skibitsky, her ex-husband's counsel. Id. ¶ 48. Plaintiff also takes issue with the GAL communicating with Skibitsky and Joseph by email without her being included in the chain. Id. ¶ 46.

State court custody proceedings continued through 2025, leading to this federal lawsuit in January 2026. At one point, Courtney retained Defendant Mulligan as her counsel in custody proceedings. Id. ¶ 33. Mulligan allegedly caused a stipulated custody order to be entered without fully explaining to Courtney what "stipulated" meant. Id. ¶ 34. Courtney's exhibits reference that, in May 2025, Judge Toohil ordered the plaintiff's custodial periods to be supervised. (Doc. 1-5).

On October 19, 2025, Courtney emailed Defendant Mulligan with her concerns about her case. Id. She suggested that Mulligan was working with Joseph's counsel, Defendant Skibitsky, to "set her up for contempt[.]" She also requested that all custody proceedings stop until she could secure further information. Id.

Thereafter, Defendant Mulligan filed a motion to withdraw as Courtney's counsel, which was granted. Id. After Courtney obtained Mulligan's file on her case, the plaintiff allegedly discovered an email chain indicating she had been accused of posting a video on the internet of Joseph engaging in sexually explicit

conduct.[5] Id. ¶ 38. Per the plaintiff, Defendants Skibitsky, Mulligan, and Phillips were involved in that email exchange. Courtney asserts that she was not involved in posting this material. Id.

In December 2025, Joseph filed a petition in custody accusing Courtney of colluding with the custody supervisor to cause the plaintiff's custodial periods to be unsupervised.[6] Id. ¶ 37. The matter was set for a hearing on January 5, 2026. (Doc. 1-5, Pl. Ex. C. at ECF p. 15).

One day later, on January 6, 2026, Courtney filed the instant lawsuit against the above-named defendants. She also filed a motion for appointment of counsel, (Doc. 6), and a motion for a temporary restraining order and preliminary injunction, (Doc. 4).

Pursuant to the Federal Magistrates Act, 28 U.S.C. § 636, this matter was referred to Chief Magistrate Judge Daryl F. Bloom. He reviewed Courtney's complaint under 28 U.S.C. § 1915(e)(2)(B). Magistrate Judge Bloom's R&R recommends dismissal with leave to amend. (Doc. 10). The R&R also recommends that Courtney's accompanying motions for counsel and injunctive relief be denied. Id.

---

[5] Courtney filed approximately 55 pages of exhibits to support the allegations in her complaint, including her emails to Luzerne County court personnel and Defendant Mulligan. She did not include these emails referenced in this paragraph of the complaint.

[6] The court's review of the exhibits indicates that the supervisor appointed was the caseworker that Courtney had moved in with in 2024.

**Jurisdiction**

In addition to the civil rights claims asserted under 42 U.S.C. § 1983, Courtney also asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131–12134. The court thus has subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1331. As for the plaintiff's state law claims, the court has supplemental jurisdiction under 28 U.S.C. § 1367(a).

**Standard of Review**

In disposing of objections to a magistrate judge's R&R, the district court must make a *de novo* determination of those portions of the report against which objections are made. Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983) (citing 28 U.S.C. § 636(b)(1)(C)). "[T]he district court 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].' " Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987) (quoting 28 U.S.C. § 636(b)(1)(C)). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

The R&Rs reviews plaintiff's allegations under 28 U.S.C. § 1915(e)(2)(B). Section 1915(e)(2)(B) is part of a federal statute governing *in forma pauperis*

("IFP") proceedings. It mandates that federal courts dismiss any lawsuit filed by an IFP plaintiff if the court determines that the action is frivolous or malicious, fails to state a claim, or seeks relief against an immune defendant. The standard for dismissal of a complaint for failure to state a claim under Section 1915(e)(2)(B)(ii) is the same standard for dismissal for failure to state a claim under Rule 12(b)(6). Herrera v. Agents of Pennsylvania Bd. of Prob. & Parole, 132 F.4th 248, 254 n.5 (3d Cir. 2025) (citation omitted).

To meet the Rule 12(b)(6) standard, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief which is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pennsylvania

State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted). The third step evaluates the plausibility of the remaining allegations. Id.

Additionally, under Rule 12(b)(6), courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). As a pro se litigant, the plaintiff's filings are also liberally construed and held to less stringent standards than formal pleadings drafted by lawyers.[7] Erickson v. Pardus, 551 U.S. 89, 94 (2007).

---

[7] Courtney Voyton's filings are all aided by generative AI. Her complaint contains at least one clear hallucination. (Doc. 1, Compl. ¶ 43). Her objections argue about the non-applicability of legal doctrines not discussed in the R&R. (Docs. 11, 11-1). Plaintiff's filings also include heavy

In addition to the *de novo* review afforded by plaintiff's objections to the R&R, 28 U.S.C. § 636(b)(1)(C), the IFP statute expressly provides that "the court **shall** dismiss the case **at any time** if the court determines that…the action…fails to state a claim on which relief may be granted[,]" 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added). The IFP statute creates an ongoing obligation for the court to review the plaintiff's pleadings and an independent, mandatory basis for dismissing the plaintiff's claims if appropriate. To the extent the court strays from matters raised in the R&R and the objections, it is doing so pursuant to 28 U.S.C. § 1915(e)(2).

Additionally, mindful that this is Courtney Voyton's first attempt at advancing allegations of civil rights violations, the court also considers whether the plaintiff should be afforded leave to amend. "[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).

---

usage of numbered lists, em dashes, and "it's not X, it's Y" arguments. The court addresses plaintiff's AI usage throughout this memorandum.

## Analysis

### 1. Plaintiff's Section 1983 Claims

Courtney's complaint asserts nine claims for relief. Counts I through IV advance claims under Section 1983. In Count I, Courtney alleges that all defendants are liable for violating her procedural and substantive due process rights. Count II claims that all defendants retaliated against her for exercising her First Amendment rights. In Count III, Courtney raises a Section 1983 conspiracy claim against all defendants. Count IV alleges that Luzerne County, Luzerne CYS, the Luzerne County DA's office, and Nanticoke PD are all liable under Section 1983 through the use of unconstitutional customs.

#### a. Whether Defendants Joseph Voyton, Skibitsky, Phillips, and Mulligan are State Actors and Whether Plaintiff's Section 1983 Conspiracy Claim is Plausible

The court begins with a discussion of the Section 1983 claims against the individual defendants. Section 1983 is not a source of substantive rights but is merely a means through which to vindicate violations of federal law committed by state actors. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or

laws of the United States. Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins. 487 U.S. 42, 48 (1988)).

To prevail on a conspiracy claim under Section 1983, a plaintiff must prove that persons acting under color of state law reached an understanding to deprive her of her constitutional rights. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 293–94 (3d Cir. 2018) (citation omitted). After the plaintiff alleges that the "object of the conspiracy was the deprivation of a federally protected right, 'the rule is clear that' the plaintiff 'must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action.' " Id. at 295 (quoting Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 184–85 (3d Cir. 2009)).

The purpose of Section 1983 "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161 (1992). Consequently, the R&R flags Defendants Joseph Voyton, Skibitsky, Phillips, and Mulligan as individuals who would not be categorized as state actors absent some additional connections to the state. (Doc. 10 at 12–14). Chief Magistrate Judge Bloom concludes that the complaint fails to allege those connections. Id.

Courtney's complaint also advances an allegation stating, in relevant part: "judicial and prosecutorial inaction, in the face of clear evidence of abuse and criminal conduct…left A.V. exposed to ongoing harm and demonstrates how Luzerne County actors—including the Court, CYS, and the DA's office—worked in concert to silence [p]laintiff and shield her abuser."(Doc. 1, ¶ 30). Based on such allegations, the R&R also concludes that Courtney's allegations fall short of a plausible conspiracy claim. (Doc. 10 at 15–16).

Courtney's objections overlap on the state actor and conspiracy conclusions. She objects as follows:

> 1. **Governing principles.** Private parties become state actors when they (a) jointly participate with state officials, (b) conspire with them, or (c) exercise powers derived from the state. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Lugar v. Edmonson Oil. Co., 457 U.S. 922, 941–42 (1982). Even if a judge or official is immune, private co-conspirators remain liable. Dennis v. Sparks, 449 U.S. 24, 28–29 (1980). The Third Circuit reiterates these principles. Great Western Mining, 615 F.3d at 175–79.

(Doc. 11-1 at 4–5).

In the underlying state court matters, there are three different groupings of court orders to consider: orders in dependency, orders in custody, and orders issued in PFA proceedings. Upon review of plaintiff's allegations, the above objection contains a faulty assumption. That is, the above argument reads as if the complaint contains factual allegations of agreement and concerted action

connecting the named defendants to the three judges presiding over her matters in the Luzerne County Court of Common Pleas. For example, there are no specific allegations that the defendants conspired with Judge Toohil to limit the plaintiff's physical custody of Minor Child A.V. in a court order after dependency proceedings, or that defendants conspired with Judge Rodgers to terminate the dependency in the first place, or that the defendants conspired with Judge Salavantis to deny the plaintiff a Protection from Abuse Order along the way. Absent such allegations, the court reaches the same conclusion as the R&R.

Courtney further objects as follows:

> 2. **Application.** The Complaint alleges joint activity and concerted action such as:
>
> a. Opposing counsel served simultaneously as a Luzerne County Assistant Solicitor, creating official influence within County-tied functions (CYS, GAL), while representing Plaintiff's ex-husband (¶¶ 40–44).
>
> b. The GAL acted under a court appointment and imposed a barrier routing all Plaintiff's safety communications through the opposing attorney (¶¶ 45–48).
>
> c. Internal emails reflect coordinated messaging about Plaintiff, including false accusations and mental-health narratives (¶¶ 38–39).
>
> 3. ...The R&R's contrary conclusion misapplies Twombly/Iqbal by discounting concrete details as "vague".

<u>Id.</u> at 5.

As for whether Defendants Joseph Voyton, Skibitsky, Phillips, and Mulligan are state actors, the R&R did not discount concrete details as "vague." Where "seemingly private behavior" is involved, state action may only be found if there is a close nexus between the state and the challenged action. Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001). As Courtney's allegations stand now, Defendant Joseph Voyton, a private individual, is not a state actor merely by being an adversarial party in state family court matters.

Courtney has also sued three private individuals for actions taken in their roles as attorneys. "[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." Polk County v. Dodson, 454 U.S. 312, 318 (1981). Thus, to hold these lawyers liable, she "must point to some action that is 'fairly attributable' to the state." Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999) (quoting Lugar, 457 U.S. at 937). In doing so, she "must show (1) that the attorney defendants' acts were 'the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible' and (2) that the attorney defendants may fairly be said to be state actors." Id. Three broad tests exist to determine whether state action exists:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state;
>
> (2) whether the private party has acted with the help of or in concert with state officials; and
>
> (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) (cleaned up).

As for these attorneys, Defendant Skibitsky draws the most attention in Courtney's averments. Her complaint alleges, in relevant part:

> 42. By acting as my ex-husband's lawyer in a case that involved **dependency proceedings, Children and Youth Services (CYS), and a court-appointed Guardian ad Litem (GAL)**—all tied directly to Luzerne County—Mr. Skibitsky created a serious conflict of interest. The County had a stake in this case, and he was on both sides at once.
>
> 43. Pennsylvania law and ethics rules make this clear. Rule 1.7 of the Pennsylvania Rules of Professional Conduct says lawyers cannot represent clients when there's a conflict. And **42 Pa.C.S. §5522** says government lawyers cannot act as private counsel in matters where the government has any interest. Here, the County was involved through CYS and the GAL, so ***this was flat-out improper.***

(Doc. 1).

Prior to addressing the merits of the allegations against Skibitsky, plaintiff is admonished for misrepresenting the law. The statute cited by plaintiff in Paragraph 43 has nothing to do with a government lawyer's professional responsibility. Rather, the statute referenced requires a person to file a formal

written notice of their intent to sue a state governmental unit for personal injury or property damage within six months of the incident. 42 PA. CONS. STAT. § 5522(a).

It is improper to misstate the law in this manner. See FED. R. CIV. P. 11(b). Therefore, plaintiff's future filings in this court will require an affidavit regarding AI usage.

This misrepresentation aside, Courtney's state-actor allegations against Defendant Skibitsky rest entirely on his two roles as assistant county solicitor and privately retained counsel for Joseph in dependency and custody proceedings. Defendant Skibitsky's role as assistant county solicitor does not automatically make him a state actor for the purposes of this lawsuit. In this circumstance:

> the relevant question is not whether the private actor and the state have a close relationship generally, but whether there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005) (emphasis added) (citation omitted). In other words, the government must be "responsible for the specific conduct of which the plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (emphasis omitted). And this is true even when the actor is employed by the state. As we explained in Mark v. Borough of Hatboro, "an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state." 51 F.3d 1137, 1150 (3d Cir. 1995).

Borrell v. Bloomsburg Univ., 870 F.3d 154, 160 (3d Cir. 2017).

Put more succinctly, a plaintiff must show such a "tight connection" between a state and the challenged action that the state could be held responsible for that action. Matrix Distributors, Inc. v. Nat'l Ass'n of Boards of Pharmacy, 34 F.4th 190, 195 (3d Cir. 2022).

That tight connection is not advanced in the complaint. Without allegations that Skibitsky billed the county for his time, used county resources, invoked county authority, or acted pursuant to any county policy in the various Voyton proceedings, or otherwise conspired with the three different judges involved in those proceedings, plaintiff's Section 1983 claims against Skibitsky are not plausible, no matter how many times the plaintiff puts her allegations in bold italics.

Furthermore, despite a conclusory allegation from the plaintiff in Paragraph 42 above, Luzerne County does not have a stake in the Voytons' private custody dispute. If it does, plaintiff has not alleged facts supporting the county's connection. For example, Courtney asserts that Defendant Phillips is a state actor in her role as GAL. However, there are no allegations that Phillips billed the county or otherwise used county resources to represent the best interests of Minor Child A.V. Plaintiff's own exhibits indicate that Phillips was appointed by Judge Toohil in a court order. "Court appointed counsel, especially one serving as a guardian ad litem, does not qualify as a state actor for purposes of § 1983."

Goodson v. Maggi, 797 F. Supp. 2d 624, 637 (W.D. Pa. 2011) (citing Polk County, 454 U.S. at 325 and collecting cases). Other exhibits demonstrate that Phillps provided the Voytons with a private retainer agreement to serve as a GAL. (Doc. 1-6). Therefore, plaintiff has not plausibly alleged that Phillips is a state actor.

The state actor allegations regarding Defendant Mulligan are even more tenuous. Mulligan was privately retained by the plaintiff. His state actor status is also not plausible. See Angelico, 184 F.3d at 278 (3d Cir. 1999).

Consequently, Count III fails to state a claim for a Section 1983 conspiracy claim. Additionally, all Section 1983 claims against Defendants Joseph Voyton, Skibitsky, Phillips, and Mulligan are subject to dismissal due to plaintiff's failure to allege that they are state actors.

**b. Whether Plaintiff Has Plausibly Alleged Municipal Liability Claims Against Luzerne County, Luzerne County CYS, the Luzerne County DA's Office, and Nanticoke PD**

The R&R also recommends dismissal of the remaining Section 1983 claims against Luzerne County, Luzerne County CYS, the Luzerne County DA's Office, and the Nanticoke Police Department. Prior to reaching the merits, some pruning of the named defendants is required.

Working in reverse order, claims against Nanticoke PD are really claims against the Borough of Nanticoke. See Padilla v. Twp. of Cherry Hill, 110 F.

App'x 272, 278 (3d Cir. 2004) (citing DeBellis v. Kulp, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)) (dismissing Section 1983 claim against police department because "the Police Department cannot be sued."); 8 PA. CONS. STAT. § 1121(a) (authorizing borough councils to establish a police department by ordinance), § 1123 (placing the mayor of the borough in "full charge and control of the chief of police and the police force'); cf. Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997) (treating the municipality and its police department as a single entity for purposes of Section 1983 liability). Any amended pleading should reflect that the police department is an arm of the borough and that the borough is the proper Section 1983 defendant.

As for the Luzerne County DA's Office, the Third Circuit Court of Appeals has noted that a county district attorney's office "is not an entity for purposes of § 1983 liability[.]" Reitz v. Cnty. of Bucks, 125 F.3d 139, 148 (3d Cir. 1997). Therefore, the Luzerne County DA's office will be dismissed from the remainder of this action without further discussion.

Magistrate Judge Bloom recommends dismissal of Luzerne CYS on Eleventh Amendment immunity grounds. Id. at 12 (citing Plaunt v. Perry Cnty. Children and Youth Servs., 2025 WL 1585037, at *8 (M.D. Pa. June 4, 2025)). This conclusion requires a clarification.

Specifically, the holding in Plaunt traces back to a footnote in a non-precedential Third Circuit opinion, which states as follows:

> While "[t]he Supreme Court has long held that counties, municipalities, and political subdivisions of a state are not protected by the Eleventh Amendment," Febres v. Camden Bd. of Educ., 445 F.3d 227, 229 (3d Cir.2006), the Magistrate Judge observed that Pennsylvania's domestic relations agencies, such as the Dauphin County Division of Children and Youth Services, are defined by statute as arms of the state courts and institutions of state government.

Wattie-Bey v. Att'y Gen.'s Off., 424 F. App'x 95, 98 (3d Cir. 2011).

In at least one precedential opinion, the Third Circuit has referred to a county CYS unit as an agency of a county municipality. Mulholland v. Gov't Cnty. of Berks, Pa., 706 F.3d 227, 239 (3d Cir. 2013). Absent other facts, the court concludes that Luzerne County CYS is a county agency, not a state agency. [8] That caveat aside, the court will treat Courtney's claims against Luzerne County and Luzerne CYS as being asserted against the same entity. Id.; Hatfield v. Berube, 714 F. App'x 99, 102 n.1 (3d Cir. 2017). The court will also treat

---

[8] County CYS agencies are somewhat of a hybrid. They are locally administered but subject to Pennsylvania Department of Human Services oversight. See generally 23 PA. CONS. STAT. §§ 6301–6509 (Pennsylvania's Child Protective Services Law); 62 PA. STAT. §§ 2302, 2305; 55 Pa. Code. §§ 3490.1–3490.136 (Pennsylvania's Child Protective Services Regulations). Therefore, any Eleventh Amendment immunity analysis in this case would require a much fuller factual record. Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989). Nonetheless, the court's divergence from the R&R on Eleventh Amendment immunity provides no basis to sustain the plaintiff's objections.

Courtney's claims against Nanticoke PD as claims against the Borough of Nanticoke.

Turning to the substance, a municipality cannot be held liable under Section 1983 solely because it employs a tortfeasor on a *respondeat superior* theory of liability. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). A municipality is only liable under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" Id. at 694. Furthermore, a Section 1983 plaintiff must also show that the municipality was the "moving force" behind the injury alleged—that "municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 400 (1997).

**i. Borough of Nanticoke**

The title of Courtney's municipal liability claim includes the words "unconstitutional custom" in bold capitalized letters. To determine the constitutional injury alleged, the court looks to the other counts of the complaint. Courtney's complaint contains claims for substantive and procedural due process violations in Count I. The court will liberally construe the plaintiff's allegations as

asserting a substantive due process claim for deprivation of her liberty interests in the custody, care, and management of Minor Child A.V. See Croft v. Westmoreland Cnty. Child. & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997). The court will also liberally construe Count I as a challenge to the procedures used in the dependency and custody proceedings. Courtney further alleges that she experienced First Amendment retaliation and denial of access to the courts in Count II.

After review of the allegations in Courtney's complaint, there does not appear to be a cogent, cognizable link between custom and injury in this case with respect to the Borough of Nanticoke. According to plaintiff, the Borough of Nanticoke is liable under Monell because its police department failed "to investigate credible abuse reports." (Doc. 1, Compl., Count IV, ¶ 2a). Courtney alleges that Nanticoke PD responded to a specific incident of domestic violence perpetuated by her ex-husband on December 5, 2023. Id. at ¶ 14. When the police responded, they allegedly threatened to arrest the plaintiff for attempted homicide. Id. Then, according to the plaintiff, they told her the incident never happened. Id. Per plaintiff, she also repeatedly reported other incidents of domestic violence, but Nanticoke PD only treated these reports as evidence of the plaintiff's need for mental health services. Id. at ¶ 16. The above events,

however, triggered a child abuse investigation and dependency proceedings under Pennsylvania law. Id. ¶ 19.

Courtney also offers other facts that break the direct causal link between municipal action and the above-referenced alleged deprivation of her rights. For instance, plaintiff alleges that she went directly to the Luzerne County DA's Office and reported the domestic violence and Nanticoke PD's non-investigation. Id. ¶ 18. Rather than investigate on its own or initiate a prosecution, plaintiff was allegedly advised to "get out of the county" by an unidentified individual in that office. Id. Thus, per plaintiff's allegations, the ultimate decision not to move forward with a criminal investigation or prosecution rested with the Luzerne County DA's Office, not the Nanticoke PD.

There is also no link alleged between the Nanticoke PD and the determination that Minor Child A.V. was a dependent child. That is, plaintiff has supplied an order where she waived her right to a hearing and agreed that there were allegations that could lead the court to find Minor Child A.V. dependent. (Doc. 1-3, Pl. Ex. A at ECF p. 12). There are no allegations that she entered into this agreement under circumstances that would invalidate it.

There is also no link between the Nanticoke PD and any determination made by Judge Toohil in the custody action. That is, Courtney has not alleged that any conduct by Nanticoke police officers resulted in the order appointing a

GAL in the custody case and reducing the physical custody rights of the plaintiff. Courtney thus has failed to state a viable municipal liability claim against the Borough of Nanticoke for violations of her due process rights.

Courtney also asserts a First Amendment retaliation claim related to the conduct of the Nanticoke PD. To plead a retaliation claim under the First Amendment, a plaintiff must show: (1) that she engaged in constitutionally protected conduct; (2) that she suffered "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights"; and (3) a causal connection between the protected activity and the retaliatory act. Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006) (citing Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003)). The court discerns no allegations specific to this claim advanced against this defendant. Thus, the plaintiff fails to state any claim against the Borough of Nanticoke.

**ii. Luzerne County**

Similarly, Courtney's theories of liability against Luzerne County are not viable in the allegations of the complaint. As for the actions attributed to the Luzerne County DA's Office, she has identified a single incident of not investigating or prosecuting allegations of domestic violence, which itself does not demonstrate an unconstitutional custom. The plaintiff has also not alleged

that the decision not to investigate or prosecute came from a person with policymaking authority.

The court turns to the actions attributable to Luzerne CYS. Plaintiff alleges, in essence, that the dependency case was closed despite her "repeated warnings, including finding unexplained marks on her daughter and hearing sexually inappropriate comments from the child." (Doc. 1, Compl. ¶ 28). This allegation ignores that the decision to terminate dependency proceedings was made by Judge Rogers, not Luzerne CYS, as part of a court hearing where Minor Child's best interests were represented by a GAL and that the plaintiff had counsel. (Doc. 1-3, Pl. Ex. A at ECF p. 7). The court is hard-pressed to find any plausible due process or First Amendment retaliation claims in such facts.

**2. Whether Plaintiff is Entitled to *De Novo* Review Based on Her RICO and ADA Objections**

Count V of Courtney's complaint alleges that Luzerne County violated Title II of the ADA. Count VI advances that all named defendants are liable under RICO. The R&R recommends dismissal of those causes of action for failure to plead non-conclusory facts meeting the elements of such claims. In two sentences of her objections, plaintiff asserts that such claims were sufficiently alleged.

A district court judge is required to review written objections to an R&R on a *de novo* basis unless the objection is not timely or specific. Brown v. Astrue, 649

F.3d 193, 195 (3d Cir. 2011) (citing Goney v. Clark, 749 F.2d 5, 6–7 (3d Cir. 1984)).

Courtney's objections to this portion of the R&R lack specificity. As general objections, the court thus reviews the ADA and RICO portions of the R&R for clear error or manifest injustice. Seeing none, the R&R will be adopted as to these claims, and they will be dismissed with leave to amend. The court need not reach an analysis of plaintiff's state law claims pending this permitted amendment.

**3. Motion for a Preliminary Injunction and Motion for Counsel**

The R&R concludes that the motion for a preliminary injunction and motion for counsel should be denied. Plaintiff has not objected to these portions of the R&R. After reviewing the allegations in Courtney's complaint along with her attached exhibits, the conclusions reached by the R&R are sound and will be adopted.

**4. Ghost Arguments**

Courtney's objections also argue about the non-applicability of Younger abstention, the Rooker-Feldman doctrine, and quasi-judicial immunity. However, the R&R issued by Chief Magistrate Judge Bloom in this case did not include a discussion about any of these areas of the law. The only conclusion that may be reached is that the generative AI service used by the plaintiff steered her in the

wrong direction. The result is a misleading document and a waste of judicial resources filtering out "ghost arguments" to reach matters on their merits.

On that issue, "all litigants—represented and unrepresented—must read their filings and take reasonable care to avoid misrepresentations, factual and legal." Jones v. Kankakee Cnty. Sheriff's Dep't, 164 F.4th 967, 970 (7th Cir. 2026). That is:

> the submission of a legal filing constitutes a representation to a court and, as the Federal Rules of Civil Procedure put the point, both attorneys and unrepresented parties are certifying "that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances," the "factual contentions have evidentiary support" and the "legal contentions are warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

Id. (quoting FED. R. CIV. P. 11(b)(2), (3)) (further citation omitted).

There is some evidence that Courtney knowingly included AI hallucinations in her objections to the R&R since the R&R did not mention Younger abstention, the Rooker-Feldman doctrine, or quasi-judicial immunity. Nonetheless, the proper approach is to admonish and warn the plaintiff. The court will not allow future filings "to include misrepresentations on legal or factual points that an unrepresented party reasonably knows or should know exist." Id. at 271.

Therefore, should Courtney decide to file an amended complaint or any future motion, brief, or other paper with the court, she shall file a separate

affidavit disclosing whether generative AI has been used to prepare the filing. Such disclosure shall include reference to the AI tool used and an explanation as to how it was used. Plaintiff shall identify each section of each filing drafted using AI. Furthermore, in the affidavit, plaintiff shall certify that she has reviewed each citation to legal authority or to the record and that she has personally checked the accuracy of the citation and the proposition for which it is offered. Given the seriousness of the misrepresentations in her complaint and in her objections to the R&R, the plaintiff is forewarned that future unchecked AI usage will result in sanctions, up to and including striking pleadings and dismissing claims with prejudice.

**Conclusion**

For the reasons set forth above, the R&R will be adopted over the plaintiff's objections. Plaintiff's complaint will be dismissed with leave to file an amended complaint. Her motion for counsel and motion for injunctive relief will be denied. Plaintiff will also be required to file an affidavit regarding her AI use in all future filings. An appropriate order follows.

**Date:** 8/11/26

**JUDGE JULIA K. MUNLEY**
**United States District Court**